**Anthony Bornstein, OSB 861305**
**Assistant Federal Public Defender**
**101 S.W. Main Street, Suite 1700**
**Portland, Oregon 97204**
**(503) 326-2123 Telephone**
**(503) 326-5524 Facsimile**
**tony_bornstein@fd.org**

**Attorney for Petitioner**


## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON


**ALLEN T. REED,**                                    **Case No.: 2:21-cv-01499-HZ**

                              **Petitioner,**

                                                      **BRIEF IN SUPPORT OF**
           **v.**                                     **PETITION FOR WRIT OF**
                                                      **HABEAS CORPUS**
**BRANDON KELLY,**


                              **Respondent.**
_____

# TABLE OF CONTENTS

**Page**

I.    Introduction and summary of argument ................................................................... 1

II.    Statement of facts and procedural history ............................................................. 1

    A.    Lane County criminal case ............................................................................. 1

    B.    Postconviction relief proceedings ................................................................ 7

    C.    Federal Habeas Corpus case ........................................................................ 11

III.    Trial counsel rendered ineffective assistance when he failed to utilize a remaining peremptory challenge against Juror Vulk. ........................................... 11

    A.    The right to an impartial jury ....................................................................... 11

    B.    The right to effective assistance of counsel is critical in jury selection. .................................................................................................... 13

    C.    Defense counsel unreasonably failed to challenge the sitting of Juror Vulk ................................................................................................... 15

    D.    Prejudice has been established. .................................................................... 17

    E.    The Sixth Amendment violation satisfies the standards for relief under the AEDPA. .................................................................................... 18

IV.    Trial counsel's failure to challenge prosecutorial misconduct in closing argument deprived Mr. Reed of a fair trial and prejudiced the outcome. .............. 19

    A.    Defense counsel must protect against prosecutorial misconduct. ............... 19

V.    The cumulative errors require issuance of the writ. ............................................. 23

Conclusion .................................................................................................................... 24

i

# TABLE OF AUTHORITIES

## SUPREME COURT OPINIONS

**Page**

*Berger v. United States*,
    295 U.S. 78 (1935) ................................................................. 19

*Lockhart v. Fretwell*,
    506 U.S. 364 (1993) ............................................................... 13

*Michelson v. United States*,
    335 U.S. 469 (1948) ............................................................... 20

*Morgan v. Illinois*,
    504 U.S. 719 (1992) ............................................................... 11

*Neder v. United States*,
    527 U.S. 1 (1999) ................................................................... 17

*Parker v. Gladden*,
    385 U.S. 363 (1966) ............................................................... 11

*Patton v. Yount*,
    467 U.S. 1025 (1984) ............................................................. 13

*Ramos v. Louisiana*
    140 S. Ct. 139 ....................................................................... 10

*Rosales-Lopez v. United States*,
    451 U.S. 182 (1981) ............................................................ 4, 12

*Smith v. Phillips*,
    455 U.S. 209 (1982) ............................................................... 18

*Strickland v. Washington*,
    466 U.S. 668 (1984) ............................................. 13, 16, 18, 23

*United States v. Martinez-Salazar*,
    528 U.S. 304 (2000) .......................................................... 11, 12

*Wainwright v. Witt*,
    469 U.S. 412 (1985) ............................................................... 11

*Williams v. Taylor,*
    529 U.S. 362 (2000) ................................................................................. 18

## FEDERAL COURT OPINIONS

*Art Press, Ltd. v. W. Printing Mach. Co.,*
    791 F.2d 616 (7th Cir. 1986) ................................................................ 12

*Dyer v. Calderon,*
    151 F.3d 970 (9th Cir. 1998) ................................................................ 11

*Estrada v. Scribner,*
    512 F.3d 1227 (9th Cir. 2008) .............................................................. 17

*Fields v. Brown,*
    503 F.3d 755 (9th Cir. 2007) ................................................................ 13

*Gumm v. Mitchell,*
    775 F.3d 345 (6th Cir. 2014) ................................................................ 22

*Hughes v. United States,*
    258 F.3d 453 (6th Cir. 2001) ........................................................... 14, 15

*Johnson v. Armontrout,*
    961 F.2d 748 (8th Cir. 1992) ................................................................ 17

*Mancuso v. Olivarez,*
    292 F.3d 939 (9th Cir. 2002) ................................................................ 23

*Miller v. Francis,*
    269 F.3d 609 (6th Cir. 2001) ................................................................ 14

*Miller v. Webb,*
    385 F.3d 666 (6th Cir. 2004) ........................................................... 13, 18

Miller v. Webb, supra ................................................................................. 14

*Parle v. Runnels,*
    505 F.3d 922 (9th Cir. 2007) ................................................................ 23

*Sanders v. Norris,*
    529 F.3d 787 (8th Cir. 2008) ................................................................ 17

*Stouffer v. Reynolds*,
    168 F.3d 1155 (10th Cir. 1999) ................................................................. 23

*United States v. Allsup*,
    566 F.2d 68 (9th Cir. 1977) ....................................................................... 12

*United States v. Artus*,
    591 F.2d 526 (9th Cir.1979) (per curiam) ................................................. 21

*United States v. Barraza*,
    576 F.3d 798 (8th Cir. 2009) ..................................................................... 13

*United States v. Brown*,
    880 F.2d 1012 (9th Cir. 1989) ................................................................... 22

*United States v. Gonzalez*,
    214 F.3d 1109 (9th Cir. 2000) ....................................................... 11, 12, 18

*United States v. Mageno*,
    762 F.3d 933 (9th Cir. 2014) *opinion vacated on reh'g*, 786 F.3d 768 (9th Cir. 2015)
    ................................................................................................................... 21

*United States v. Martin*,
    796 F.3d 1101 (9th Cir. 2015) ................................................................... 22

*United States v. Nelson*,
    277 F.3d 164 ............................................................................................. 19

*United States v. Price*,
    485 Fed. Appx. 396–98 (11th Cir. 2012) .................................................. 12

*United States v. Ramirez*,
    176 F.3d 1179 (9th Cir.1999) .................................................................... 21

*United States v. Richards*,
    719 F.3d 756 (7th Cir. 2013) ..................................................................... 20

*United States v. Schuler*,
    813 F.2d 978 (9th Cir.1987) ...................................................................... 21

*United States v. Sithithongtham*,
    192 F.3d 1119 (8th Cir. 1999) ................................................................... 19

*United States v. Span*,
  75 F.3d 1383 (9th Cir. 1996) ................................................................ 14

*Virgil v. Dretke*,
  446 F.3d 598 (5th Cir. 2006) ................................................................ 16

*Washington v. Hofbauer*,
  228 F.3d 689 (6th Cir. 2000) ................................................................ 19

*Zapata v. Vasquez*,
  788 F.3d 1106 (9th Cir. 2015) .............................................................. 20

## UNITED STATES CODE

28 U.S.C. § 2254(d) ................................................................................. 22

## CONSTITUTIONAL PROVISION

U.S. Const. Amend VI ...................................................................*passim*

## STATE CASES

*Lambert v. Srs. of St. Joseph*,
  277 Or. 223, 560 P.2d 262 (1977) ........................................................ 12

*Reed v. Kelly*,
  311 Or. App. 397, 488 P.3d 824 (2021) ................................................ 10

*Rivera-Moreno v. Government of Virgin Islands*,
  2014 WL 4805675 (V.I. 2014) .............................................................. 17

*State v. Williams*,
  123 Or. App. 546, 860 P.2d 860 (1993) ................................................ 12

## STATE STATUTES

ORS 136.210(1) ........................................................................................ 12

v

I.     **Introduction and summary of argument**

In this Federal habeas corpus case, Allen Reed challenges his Lane County convictions, from 2013, for rape, sodomy and related offenses. He asserts here, as he did in state collateral proceedings, that those convictions are invalid due to ineffective assistance by his trial counsel. Specifically, trial counsel negligently failed to exercise one of his available peremptory challenges to a juror who was demonstrated prejudicial bias and who was uncertain, based on tragic life circumstances, whether he could be fair and impartial. Separately, counsel should have objected to a highly prejudicial segment of the prosecutor's closing argument. Both of these Sixth Amendment claims are preserved for federal review. For the reasons that follow, the standard for habeas relief is satisfied and the Writ should issue against Mr. Reed's convictions in this case.

II.    **Statement of facts and procedural history**

A.     **Lane County criminal case**

In September of 2013, a Lane County grand jury indicted Allen Reed for various offenses arising from an incident involving Mr. Reed and Catherine Young, occurring on July 15, 2013. The charges included Kidnapping in the Second Degree, Rape and Sodomy in the First Degree, Sexual Abuse in the First and Second Degree, and Coercion. A separate indictment charged Theft and Felon in Possession of a Firearm. Resp. Exs. 103 & 104.

Attorney Robert Kaiser was appointed to represent Mr. Reed. The case was heard in a jury trial beginning with jury selection on November 13, 2013.

**1 - BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

During the court's *voir dire* examination, Juror Donovan Vulk expressed concern about his ability to serve as a fair and impartial juror in the trial. He disclosed that his oldest daughter had been raped, that the perpetrator in that crime had never been brought to justice and the suffered anger issues as a result. He told the court that his is heart was pounding just from hearing the charges against Mr. Reed 11/13/13, Tr 49-51. He stated: "Do I think I'm a fair, impartial fact-finder? I think I could be. But it bothers me." Tr 50.

Vulk further disclosed that his son had been severely assaulted, needing "30-some stitches to his head" from the violent attack. He added that his home was burglarized. Tr 60-63.  Elaborating on his concerns about serving on the jury in this case, he stated that he continued to have anger issues about it, that it affected his daughter's young life, and that her innocence was taken from her, that it was difficult on him as a father, as she has carried "that baggage" for the last nine years, and that "the wound is fairly open again for" him and his wife. When queried on his ability to "judge the case on its merits," he replied: "I would always think that's what I would do." Tr 63-64

While the record is uncertain, it appears that Mr. Kaiser used only four of his six peremptory challenges. The record is clear that he chose not to exercise a remaining peremptory challenge to excuse Mr. Vulk as a juror in the case. Tr 66-166.[1] The jury was impaneled and the trial proceeded. In his opening statement, Kaiser explained the defense:

---

[1] This numerical count regarding the peremptory challenges is stated in Reed's postconviction pleadings (Resp. Ex. 112, p. 24, lines 4-5), and his appellate brief. Resp.

**2 - BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

> Ladies and gentleman, . . . Mr. Allen Reed will tell you in his own words that
> he did not commit these offenses. That he did not hold her against her will.
> That he did not sexually assault her in any way. . . . He will tell you in his
> own words that . . . at no point did he assault her. Did he rape her. Did he
> sexually abuse her. Did he sodomize her.

Tr 25-28.

### 1.  The Prosecution's case

The following evidence was adduced at trial. Allen Reed and Cathy Young were in

an intimate relationship. 11/14, Tr 32. They fought frequently and Young was afraid

of Reed. Tr 32, 36. He often kept her cell phone from her. Tr 32, 37. Reed called or texted

Young's male friends and relatives and threatened them. Tr 38.

On July 14, 2013, Reed and Young were driving in her car when Reed called

Young's brother. 11/14 Tr 38. Reed and Young's brother "exchanged words. They were

going to kill each other[,]" according to Young. Tr 38. When they got back to Young's

apartment, there was knocking at the door. Tr 39. It was the police knocking. Young's

brother had called them and asked them to check on Young's welfare. Tr 120. Young did

not know it was the police. She thought it might be her brother at the door. Tr 41.

Reed pushed Young into the bathroom, told her not to answer the door, and

threatened that he would hurt her if she said anything: Young did not want to go into the

bathroom but she "thought [Reed] was going to bust [her] skull." Tr 40. The knocking was

---

Ex. 133, p. 14 (Respondent's Exhibit number), citing Tr 145-94. In reply, the Respondent
stated the record is silent on that point. Resp. Ex. 134, p. 11 n. 2.

**3 - BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

loud, and they waited in the bathroom until it stopped. Tr 41. Rosales, the officer who had responded to Young's brother's call, knocked and rang the doorbell, but "cleared" after nobody came to the door. Tr 120. He and his colleague were at the apartment for "probably . . . a good 10 minutes, 15 minutes." Tr 121.

After the police left and Reed and Young left the bathroom, Young called the police and told them that everything was okay, even though "it wasn't." Tr 42. She testified that she was "scared to death" of Reed. Tr 42.

The next morning, Young told Reed that he needed to get out of her house. Tr 43. She left him alone in her apartment all day. Tr 43-44. When she returned that evening, Young was surprised to see that Reed was still there because he was "supposed to be gone." Tr 44. But he "made [her] feel like everything was okay." Tr 44. Then he got between her and the door and locked it. Tr 45. He had an "awful, mean look on his face[,]" and Young knew that "nothing was okay." Tr 45.

Young testified that Reed grabbed her vagina with his hand and twisted as hard as he could, hurting her "really bad." Tr 45. He accused her of having sex with other people. Tr 45. Reed dragged Young by the arm down the hallway into her bedroom. Tr 46. In the bedroom, he got between her and the door and locked the door. Tr 46. He called her a "ho" and accused her of having been with five other guys. Tr 47. He was very angry, "talking through [his] teeth . . . close to [Young's] head . . . ." Tr 48. He took her underwear off and pushed her on the bed. Tr 48. Reed told Young he "was going to try and figure how many

**4 - BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

guys [she] fucked that day" and put his penis in her vagina. Tr 49. He was standing over her and holding her down with one arm. Tr 49.

Young told Reed to stop but he did not listen. Tr 50. He continued to say awful things, including that he was sure that Young had had anal sex with several men that day and that he was going to have anal sex with her too. Tr 50. She told him no, but he inserted his penis into her anus. Tr 51. When she tried to get away on the bed, Reed pulled her back by her feet. Tr 51. Reed told Young she "was a ho and wasn't worth shit." Tr 52. He said something about "white girls like it from the back to the front." Tr 52.

Reed let her off the bed. Young then went into the bathroom and took a bath. Tr 52. Reed still had her phone. Tr 53. Young's daughter texted and Reed allowed Young to have the phone back to call her daughter. Tr 54. While Young was talking to her daughter, Reed was right next to her head, monitoring the call. Tr 54. Young managed to convey that she was not all right, and her daughter called the police. Tr 56. The police arrived and arrested Reed after talking to Young. Tr 115.

On July 16, 2013, Wendy Wilson, a sexual assault nurse examiner, performed a forensic sexual assault examination on Young. Tr 140. Wilson found bruising, scrapes, abrasions, genital and anal swelling, anal spasm, and stool leakage, all, in her opinion, consistent with Young's description of what happened. Tr 150-60. Young told Wilson that Reed had penetrated her anus with his finger rather than his penis. Tr 159. There was some vaginal bleeding, although Wilson did not see any vaginal tears or scrapes. Tr 160-61.

**5 - BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

## 2. *The defense case*

Mr. Reed testified that he did not threaten Young or confine her in the bathroom on the night of July 14, 2013. 11/15 Tr 20-21. To the contrary, while in the bathroom, Young was shushing him and trying to hide both of them from her brother. *Id.*, Tr 21. He also testified that he and Young had been fighting verbally on July 15, but that they had no sexual contact with each other that night. Tr 42-43. He denied that he grabbed or penetrated her vagina and that he had penetrated her anus with either his finger or his penis. Tr 43. He said that any bruises or scrapes she might have had could be a result of consensual rough sex between them earlier in the week. Tr 65-68.

During cross examination of Reed, the prosecutor recited his past convictions that the State characterized as crimes of dishonesty. These included convictions for theft, identity theft, forgery, failure to appear, and false information to a police officer. The prosecutor also brought the jury's attention Reed's conviction for one crime involving domestic violence, an Assault in the Fourth Degree from 2000. Tr, Vol 7, pp. 44-45. *See* Resp. Ex. 112 pp. 37 39 (quoting transcript portion).

## 3. *Summation*

In her summation, the prosecutor delivered the following argument to the jury:

I want to start by discussing the defendant's testimony. And frankly I'll just characterize it as indescribably inappropriate behavior on the stand. He appeared to be making facts up as he went. He would -- counsel would ask him a question. He would kind of pause and then, Oh, yeah. I remember. Uh-huh. Yep. He laughed throughout his testimony. Frankly throughout this trial. He laughed. Indescribably inappropriate. Not only was his testimony about as incredible as you can get, to top off, you certainly have the evidence that

**6 - BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

he's a convicted liar, essentially. He's been convicted numerous times of crimes of dishonesty. And I would submit to you that he was entirely dishonest on the stand. *He has lots of convictions for domestic violence assault.*

Tr 509-10 (emphasis added). Defense counsel lodged no objection to this argument.

### 4. *Jury Verdict and Sentence*

The jury convicted Mr. Reed on all counts. Resp. Ex. 111, p. 55-57: Resp. Ex. 127 & 128. The verdict on the second-degree kidnapping charge was by a vote of 10-2. Tr 135-37. Juror Vulk was the foreman of the jury. Resp. Ex. 127 & 128 ("Presiding Juror"). Resp. Ex. 128 (verdict on Theft and Felon in Possession of a Firearm). After the parties presented their positions at sentencing, the court imposed a combined prison term of 344 months. Tr 558-64. (A chart listing each individual sentence is found at Resp. Ex. 111, p. 5).

### B.    Postconviction relief proceedings

Following his appeal, Mr. Reed challenged his convictions through a petition for postconviction relief. Resp. Ex. 110. PCR Counsel filed an Amended Petition for Post-Conviction Relief, raising claims of ineffective assistance of counsel. Among other claims, he asserted that that his counsel at trial, Mr. Kaiser, had rendered ineffective assistance by failing to exercise a peremptory challenge to Juror Vulk. Resp. Ex. 111, p. 10-13. He asserted that: "[c]ompetent counsel exercising reasonable professional skill and judgment would use a peremptory challenge to excuse Juror [Vulk] from deliberating as a juror on petitioner's case." Resp. Ex. 111, 12. In addition, "Because Juror [Vulk] became the

foreman of petitioner's case, there is more than a mere possibility that Mr. Kaiser's failure to excuse Juror [Vulk] from petitioner's jury affected the result of his prosecution." *Id*.

Separately, he asserted that Kaiser rendered ineffective assistance in failing to object and move to strike several improprieties in the prosecutor's summation. His petition listed these improprieties. Among the ones that defense counsel should have objected to was the prosecutor's suggestion that Reed had a propensity to commit acts of domestic violence, as when the prosecutor told the jury: "And I would submit to you that he was entirely dishonest on the stand. He has lots of convictions for domestic violence assault." Tr p. 115, lines 14-15. Reed argued that his counsel should have moved the court to declare a mistrial based on this statement and other instances of misconduct in the prosecutor's summation. Resp. Ex. 111, p. 29. Reed further asserted that postconviction relief was warranted based on the cumulative impact from the various instances of ineffective assistance of counsel. Resp. Ex. 111, pp. 34-35.

Respondent offered a declaration from Mr. Kaiser in which he responded to the claims that he had rendered ineffective assistance. With respect to his failure to use a peremptory challenge against Juror Vulk, Kaiser stated:

> …I do not specifically recall my thoughts during voir dire. Generally, I make a judgment call if some's specific experiences are such that they cannot be fair on the case. I might also be looking at who might be coming in from the panel, who might be worse than the person who would be on the jury. I assume what was happening was that this juror was not so bad that I would take the risk of someone unknown outside the panel. I have a tendency to reserve at least one strike out of a concern that someone may be worse than the individuals currently on the panel, like a police officer or corrections officer or someone who might have some strong bias against the defendant.

**8 - BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

Resp. Ex. 130, p. 2.

Kaiser also responded to the claims that he should have objected to, or moved to strike, improper portions of the prosecutor's summation. He essentially explained he will not object or move to strike as, in his view, it only highlights the damaging portions of the prosecutor's argument. *Id*., p. 3.

The case was heard in a postconviction hearing in which Mr. Reed testified. After the parties argued their positions, the court ruled from the bench. On the issue regarding the peremptory challenge that was not exercised, the court found as follows:

> [T]here easily can be a difference between how a person looks at a child victim sex charge versus an adult coming in, explaining what happened. That's the first situation.

> But the real difficulty about jury selection is you need to have physical presence in the courtroom to really see jury selection. You need to see the interaction, the volume of speech, the inflection, the looks that the questioner and the person answering the question give;

> And then this issue of who's next. And I think any practicing lawyer has been there. I always had the rule that I want to keep one reserved because [unclear] is gone or somebody is coming right behind this person. And those are all factors in jury selection. And there is the issue…did the trial counsel make error for not challenging this particular juror.

> And there's really nothing in the record that shows that. Certainly everybody brings past experiences into a courtroom. But then you have to ask the questions that the court and prosecutor did ask. And again you got to be able to point to misconduct or something wrong from trial counsel. And I don't see that.

> There's nothing here to show that this juror could not set aside what happened to his young daughter by someone while this is an adult case, totally different circumstances. And he said he could do his best to do that.

Resp. Ex. 131, pp. 39-40.

**9 - BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

The court also found no ineffectiveness in defense counsel's failure to object, move to strike, or move for a mistrial regarding the prosecutor's closing argument. Resp. Ex. 131, pp. 41-43. The court further found that there was no authority under Oregon law to invoke cumulative error. *Id*., p. 44. A written judgment ensued. Resp. Ex. 132.

Reed appealed from the denial of relief. He pursued his claim that counsel rendered ineffective assistance when he failed to use one of his peremptory challenges to excuse Juror Vulk. Resp. Ex. 133. He also pursued his claim that counsel should have objected or otherwise challenge improper prosecutorial argument. *Id.* He also advanced his cumulative claim. *Id.* (Fourth Assignment of Error).

The Oregon Court of Appeals affirmed the denial of relief in a published opinion. Resp. Ex. 136; *Reed v. Kelly*, 311 Or. App. 397, 488 P.3d 824 (2021). Writing on the issue pertaining to the prosecutor's summation, the court stated that "we are unpersuaded that the post-conviction court erred with respect to the propensity aspect of [the PCR claim] or that all constitutionally adequate counsel would have requested a propensity instruction under these circumstances." Resp. Ex. 136, p. 6.

The Oregon Supreme Court denied Reed's petition for review. Resp. Ex. 137-38.

Thereafter, Reed filed a successive postconviction case on the basis of *Ramos v. Louisiana*, 140 S. Ct. 139 (2020). He secured relief on the conviction for Kidnapping in the Second Degree as that conviction was by a nonunanimous verdict. Resp. Exs. 140-144. Presently, Mr. Reed is represented by new counsel and is scheduled for a retrial in Lane County on that charge.

**10 - BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

C. **Federal Habeas Corpus case**

As discussed in the introduction, Mr. Reed argues in support of two ineffective assistance of counsel claims and his claim of cumulative error. Each of these claims is preserved for federal review. As noted, the kidnapping conviction has been vacated.

III. **Trial counsel rendered ineffective assistance when he failed to utilize a remaining peremptory challenge against Juror Vulk.**

A. **The right to an impartial jury**

The Sixth Amendment guarantees criminal defendants a trial and a verdict by an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 727 (1992); *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998). "The bias or prejudice of even a single juror" is enough to violate that guarantee. *Id.* Accordingly, the presence of a biased juror cannot be harmless and the error requires a new trial without a showing of actual prejudice. *Parker v. Gladden*, 385 U.S. 363, 366 (1966) (a defendant is "entitled to be tried by 12, not 9 or even 10 impartial and unprejudiced jurors"); *see also United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000) ("[T]he seating of any juror who should have been dismissed for cause … require[s] reversal.").

Challenges for cause are the primary means "by which partial or biased jurors should be eliminated." *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000). "A prospective juror may be removed for cause if his [or her] views would prevent or substantially impair the performance of his duties as a juror. *Wainwright v. Witt*, 469 U.S. 412, 424 (1985). As summarized by the Ninth Circuit:

To disqualify a juror for cause requires a showing of either actual or implied bias — "that is . . . bias in fact or bias conclusively presumed as a matter of law." Although "[b]ias can be revealed by a juror's express admission of that fact, . . . more frequently, jurors are reluctant to admit actual bias, and the reality of their biased attitudes must be revealed by circumstantial evidence."

*Gonzalez*, 214 F.3d at 1111 (citing *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977) (internal citation omitted)). Under Oregon law, a juror should be excused if there is a "substantial probability of bias" on the part of the juror. *Lambert v. Srs. of St. Joseph*, 277 Or. 223, 231, 560 P.2d 262 (1977); s*ee also* ORCP 57D(1)(g) (defining actual bias) (applicable to criminal trials though ORS 136.210(1).

"Voir dire plays a critical function assuring in the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). "The purpose of voir dire is to ascertain the existence of grounds for a challenge for cause and to enable litigants to obtain enough information to make an intelligent decision whether to exercise a peremptory challenge." *State v. Williams*, 123 Or. App. 546, 860 P.2d 860, 863 (1993) (citation omitted). "The purpose of peremptory challenges is to "help secure the constitutional guarantee of trial by an impartial jury." *United States v. Price*, 485 Fed. Appx. 396, 397–98 (11th Cir. 2012) (unpublished) (quoting *United States v. Martinez–Salazar*, 528 U.S. at 316.[2]

---

[2] *See also Art Press, Ltd. v. W. Printing Mach. Co*., 791 F.2d 616, 619 (7th Cir. 1986) (purpose of voir dire is to elicit information which shows biases of venireperson or provides counsel with basis for exercising peremptory challenges) (citing cases).

When "a juror is challenged for cause, the relevant question is 'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.'" *Miller v. Webb*, 385 F.3d 666, 673 (6th Cir. 2004) (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)).

Most importantly, for purposes of this case, the accused is entitled to a trial before jurors who can serve impartially, not simply jurors *who will try to do so. See also United States v. Barraza*, 576 F.3d 798, 803 (8th Cir. 2009) ("The test for assessing impartiality asks whether the prospective juror *can lay aside* his impression or opinion and render a verdict based on the evidence presented in court.") (citation omitted and emphasis added). In *Fields v. Brown*, 503 F.3d 755 (9th Cir. 2007), the Ninth Circuit defined actual bias as when a juror "expresses a view adverse to one party's position *and responds equivocally as to whether he could be fair and impartial despite that view.*" *Id.* at 767 (emphasis added).

### B.      The right to effective assistance of counsel is critical in jury selection.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Supreme Court's "decisions have emphasized that the Sixth Amendment right to counsel exists 'in order to protect the defendant's fundamental right to a fair trial.'" *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 684 (1984)).

*Strickland* establishes the benchmark by which a claim of ineffective assistance of counsel must be evaluated: first, the petitioner must show that counsel's performance was deficient; second, he must show that the deficient performance prejudiced the defense. 466

U.S. at 687. Ordinarily, trial counsel's strategic decisions are given wide latitude. But the strategy itself must be reasonable. *United States v. Span*, 75 F.3d 1383, 1389-90 (9th Cir. 1996) ("label of 'trial strategy' does not automatically immunize attorney's performance from Sixth Amendment challenges" based on alleged ineffectiveness of counsel).

Counsel's duty of competence applies with force in the selection of the jury. "Among the most essential responsibilities of defense counsel is to protect his client's constitutional right to a fair and impartial jury by using voir dire to identify and ferret out jurors who are biased against the defense." *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001).

In *Miller v. Webb, supra,* for example, the Court found counsel ineffective in failing to challenge for cause a juror who stated that she "thinks she can be fair, but immediately qualifie[d] it with a statement of partiality[.]" 385 F.3d at 675. The Court stated that the "decision whether to seat a biased juror cannot be a discretionary or strategic decision." *Id.* (citations omitted).

Similarly, in *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001), counsel failed to respond to a prospective juror's expression of doubt about her capacity to be fair by seeking removal for cause or by exercising a preemptory challenge. Counsel in *Hughes* also failed to ask follow-up questions. The Sixth Circuit emphasized that "no sound trial strategy could support counsel's effective waiver of

Petitioner's basic Sixth Amendment right to trial by impartial jury." *Id.* at 463.

*Hughes* is especially germane to the claim presented here.

> ### C.    Defense counsel unreasonably failed to challenge the sitting of Juror Vulk.

Constitutionally effective counsel would have sought to remove Juror Vulk. Instead, Mr. Kaiser allowed this biased juror to be seated without *any type* of challenge. As noted above, Kaiser allowed Vulk to remain on the panel for fear that a more biased juror might conceivably replace him. At least that was counsel's generic strategy seemingly followed in every criminal case, regardless of the actual answers and concerns. However, a juror who will simply try their best to be fair, but is unsure whether they can be, is not a constitutionally impartial juror. And that juror is one who should be excused from a case such as this.

When examined carefully, the record reveals that all Mr. Vulk's statements regarding impartiality were equivocal and uncertain. His admirably honest equivocation, in light of his daughter's experience as a victim of rape, fails to satisfy the constitutional impartiality requirement. At an absolute minimum, his family's history and experience, and its lasting emotional impact, was so concerning that a peremptory challenge should have been exercised.

On this record, counsel's failure to utilize one of his two remaining peremptory challenges was objectively unreasonable. Most importantly, Vulk never expressly affirmed or declared that he *would* in fact be able to follow the law and serve impartially if selected

as a juror. Rather, when asked about this ability, he said "I'd like to think I could do that." (Tr 51). He stated: "Do I think I'm fair, impartial fact finder? I think I could be. But it bothers me. . . .[v]ery much." Tr 50, lines 6-7. In fact, his heart was "pounding right now[.]" Tr 49. He had completely understandable anger issues as the assailant had not been brought to justice. Tr 50.

On this record, there was a solid basis for a cause challenge. At an absolute minimum, an available peremptory challenge should have been used to excuse this juror.

Counsel's reason or justification for *not* using a peremptory challenge was that he always wants to hold such a challenge in reserve lest there be someone more biased or concerning who would take the excused juror's place. Here, though, counsel's explanation was objectively unreasonable. The fact remains that Vulk did not affirmatively state or declare that he would or could in fact be fair in light of what his daughter and their family had been through. Even if no cause challenge was available, a prospective juror containing a more severe bias would have yielded a "cause" basis for excusal. Put another way, any juror displaying a more concerning bias than that harbored by Mr. Vulk would almost certainly have been excused for cause. In that instance, defense counsel would have still retained his available peremptory challenge. Thus, counsel's expressed rationale for failing to exercise his challenge must be deemed unreasonable. Given Kaiser's faulty reasoning, Mr. Reed's claim "overcome[s] the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689; *see Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006) (counsel was ineffective in failing to use

a preemptory or a for-cause challenge to strike two jurors who "expressly stat[ed] an inability to serve as fair and impartial jurors" and who "unequivocally expressed bias against Virgil").

### D.    Prejudice has been established.

With respect to prejudice, "[t]he presence of a biased juror is a structural error not subject to harmless error analysis." *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008) (citation omitted). As one court has noted:

> The United States Supreme Court has implicitly held that empanelment of a biased juror constitutes a structural error that is not amenable to harmless error review. *See, e.g., Neder v. United States*, 527 U.S. 1, 8 (1999) (holding that "there is a strong presumption" that an error is subject to harmless error review "if the defendant had counsel *and was tried by an impartial adjudicator*") (emphasis added).

*Rivera-Moreno v. Government of Virgin Islands*, 2014 WL 4805675, *18-19 (V.I. 2014). In line with this rule, the Eighth Circuit held that some failures of counsel, including the failure to strike a biased juror, result in structural errors that are presumed prejudicial. *Sanders v. Norris*, 529 F.3d 787, 791 (8th Cir. 2008). In *Johnson v. Armontrout*, 961 F.2d 748 (8th Cir. 1992), the Court held that counsel's failure to attempt to bar the seating of obviously biased jurors constituted ineffectiveness of counsel and affirmed the district court's granting of habeas relief stating:

> Even though the defendant failed to object to the seating of the jurors, our determination is not affected. When a defendant fails to object to the qualifications of a juror, he is without remedy only if he fails to prove actual bias. If a defendant proves that jurors were actually biased, the conviction must be set aside.

*Id*. at 754 (citations omitted).

**17 - BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

Trying a defendant before a biased jury is akin to providing him no trial at all. It constitutes a fundamental defect in the trial mechanism itself. . . . We agree that, in the absence of a strategic motive, a defendant whose attorney fails to attempt to remove biased persons from a jury panel is prejudiced. Moreover, even without a showing of actual bias, prejudice may be implied in certain egregious situations. *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor J., concurring).

*Id*. at 755-56. (citation modified).

Even where structural error is not the standard, the test is the violation's likely impact on the outcome of the trial. *Strickland*, 466 U.S. at 694-95. Here, had Kaiser exercised a peremptory challenge to Mr. Vulk, the latter would have been excused from the jury and Reed would have secured a trial by an impartial jury. Instead, Mr. Reed had a trial before at least one biased juror.  In essence, the prejudice ensues from the presence of a biased juror sitting on the trial. "[B]ecause trial counsel impaneled a biased juror, 'prejudice under *Strickland* is presumed and a new trial is required.'" *Miller v. Webb*, 385 F.3d at 676, quoting *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000)).

### E.    The Sixth Amendment violation satisfies the standards for relief under the AEDPA.

Under 28 U.S.C. § 2254(d), this Court can grant relief where the state court's ruling was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). In this case, the State post-conviction court's decision ran contrary to *Strickland*. The court also unreasonably applied *Strickland* and its progeny in denying Reed's claim of ineffective assistance. The state court also misapplied Supreme Court rulings on the impartiality requirement for jury service.

While a juror's express assurance that he can render a verdict based on the evidence presented in court indicates that she satisfies the impartiality requirement, *no such assurance was given here*. This case is similar to *United States v. Sithithongtham*, 192 F.3d 1119 (8th Cir. 1999), in which a juror testified that he "would probably give [law enforcement witnesses] the benefit of the doubt if something was questionable," but that "I could probably be fair and impartial." *Id.* at 1121. The Eighth Circuit found the district court erred by not striking the juror for cause. "'Probably' is not good enough." *Id.* at 1121. The Court concluded it was not reversible error (because the defendant used one of his preemptory strikes to remove the biased juror). *Id.* at 1121-24. Here, through an express decision by trial counsel, no preemptory strike was used and Juror Vulk sat on the case as the foreman of the jury. *See also United States v. Nelson*, 277 F.3d 164, 201 (2d 26 Cir. 2002) (district court erred by failing to strike a juror who said "he 'would like to think' of himself as objective and able to give the defendants a fair trial," but "he '[h]onestly . . . [didn't] know' whether he could do so"). The same level of uncertainty was expressed by the subject juror in this case and equivalent prejudice is present.

## IV. Trial counsel's failure to challenge prosecutorial misconduct in closing argument deprived Mr. Reed of a fair trial and prejudiced the outcome.

### A. Defense counsel must protect against prosecutorial misconduct.

A prosecutor must not seek a conviction by improper means. *Berger v. United States*, 295 U.S. 78 (1935); "One of defense counsel's most important roles is to ensure that the prosecutor does not transgress [proper] bounds." *Washington v. Hofbauer*, 228

F.3d 689, 709 (6th Cir. 2000). *See also Zapata v. Vasquez*, 788 F.3d 1106 (9th Cir. 2015) (discussed below).

In this case, the prosecutor committed serious misconduct in her summation. The Supreme Court has explained that:

> The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive *that he is by propensity a probable perpetrator of the crime.* The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.

*Michelson v. United States*, 335 U.S. 469, 476 (1948) (emphasis added). "Just as introducing evidence to show propensity is improper, so too is arguing to the jury that it should convict a defendant based on the defendant's propensity to commit a crime." *United States v. Richards*, 719 F.3d 756, 764 (7th Cir. 2013) (quotation marks omitted). Yet, in the quoted passage, that is effectively what the prosecutor did in this case.  And in the face of this misconduct, defense counsel sat silently, made no objection, and sought no remedy for the improper argument. His failure to do so fell below an objective standard of reasonableness and undermines confidence in the outcome of the trial.

Moreover, the prosecutor's inaccurate reference to multiple prior domestic violence convictions misstated the evidence adduced at trial. (Tr 115) (stating incorrectly: "He has lots of convictions for domestic violence assault.").

The Ninth Circuit has described the harm from such misstatements:

> Criminal defendants have a constitutional right "not to be convicted except on the basis of evidence adduced at trial." *United States v. Schuler,* 813 F.2d 978, 980 (9th Cir.1987). Accordingly, it has long been the rule in this circuit that prosecutors "must refrain from introducing evidence not in the record." *United States v. Artus,* 591 F.2d 526, 528 (9th Cir.1979) (per curiam). Indeed, in light of their status and stature as representatives of the government, prosecutors have an affirmative "obligation ... to avoid making statements of fact to the jury not supported by proper evidence introduced during trial." *Gaither v. United States,* 413 F.2d (1061,1079 (D.C. Cir. 1969).

*United States v. Mageno*, 762 F.3d 933, 943 (9th Cir. 2014), *opinion vacated on reh'g*, 786 F.3d 768 (9th Cir. 2015).[3] In addition, the argument was also an improper propensity argument, inferring that Reed must have committed the charged crimes because he was the kind of person who abused romantic partners.

Also, by his complete failure to object, defense counsel never called upon the court to provide any kind of curative admonition or instruction from the bench. That solidified the harm from this improper and prejudicial argument. *Compare United States v. Ramirez*, 176 F.3d 1179, 1183 (9th Cir.1999) (prosecutor's misstatement found not harmful where the judge gave a strong and specific curative instruction). No such cure was administered in this case.

The ruling by the Oregon Court of Appeals, (Resp. Ex. 136), that counsel reasonably decided not to object is flawed. A timely objection would have been sustained and a

---

[3] While *Mageno* was vacated on rehearing, it's summary of the governing law remains unquestionably true.

contemporaneous and strongly worded *curative* instruction could have been given. The trial court was not limited to giving a rote reiteration of the generic point that arguments are not evidence. The prosecutor's improper action could have ameliorated the damage.

Next, contrary to the State court's focus, the propensity nature or character of the argument does not hinge on the prosecutor's purpose in making the offending argument. Rather, the focus is always on how the jury would likely interpret an improper argument. Here, if the jury accepted the propensity logic, whether intentionally or unintentionally articulated, that would lead to a verdict on an improper basis.

Because this case hinged so significantly on the credibility of the two primary witnesses, the harm from the failure to object to the propensity argument was prejudicial to the outcome of the case. *See United States v. Martin*, 796 F.3d 1101, 1107 (9th Cir. 2015) ("the government incorrectly used the state audit to make a propensity argument that more likely than not affected the verdict on the false return charges.") citing, *inter alia*, *United States v. Brown*, 880 F.2d 1012, 1016 (9th Cir. 1989) (stating that "continued references to [defendant's] prior bad acts at the Government's closing arguments make it impossible … to say" the error was harmless"). Hence, in this case, where the prosecutor even misstated the record evidence regarding the accused's prior convictions for assault, the postconviction court's denial of relief on this highly meritorious claim was objectively unreasonable. Relief should be granted. *See Gumm v. Mitchell*, 775 F.3d 345, 383 (6th Cir. 2014) (finding prosecutor's summation flagrant and severe and granting habeas corpus

relief, *inter alia*, where "[t]he prosecution's propensity-driven argument was deliberate and was not made in response to defense counsel's arguments.").

## V.    The cumulative errors require issuance of the writ.

In the preceding sections, Mr. Reed has identified two errors of constitutional dimension. Cumulative error analysis applies where "although no single error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002), *overruled on other grounds by Slack v. McDaniel*, 529 U.S. 473 (2000). *See also Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). The cumulative impact from the errors deprived Mr. Reed of a fair trial. As the Tenth Circuit stated, in finding an aggregate Strickland violation, "cumulatively, each failure underscores a fundamental lack of formulation and direction in presenting a coherent defense." *Stouffer v. Reynolds*, 168 F.3d 1155, 1163-64 (10th Cir. 1999). In the voir dire phase of the trial, defense counsel failed to ensure an impartial jury. He then failed to counteract and challenge an improper closing argument that unquestionably harmed his client. The prosecutor misstated the evidence in summation and violated the rule against propensity arguments. Yet, based on his declaration, counsel seemed to think he shouldn't call attention to any offending or clearly objectionable argument even though the prosecutor had just then stood in the well of the courtroom and made that objectionable argument to all twelve jurors. The combination of these deficiencies by trial counsel warrants habeas corpus relief.

## Conclusion

For the foregoing reasons, and for those contained in the record of state proceedings, this Court should grant the writ of habeas corpus. Mr. Reed should be ordered released unless the State of Oregon initiates trial proceedings on all remaining charges within 90 days. The Court should grant such other relief that it deems just and proper.

Respectfully submitted on May 12, 2023.

/s/ *Anthony D. Bornstein*
Anthony D. Bornstein
Attorney for Petitioner