UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ALLEN T. REED,                                   Case No. 2:21-cv-01499-AB

       Petitioner,                             OPINION AND ORDER

    v.

BRANDON KELLY,

       Respondent.

    Susan F. Wilk
    Office of the Federal Public Defender
    District of Oregon
    101 SW Main Street
    Suite 1700
    Portland, OR 97204

        Attorney for Petitioner

    Nick M. Kallstrom
    Oregon Department of Justice
    1162 Court Street, NE
    Salem, OR 97301-4096

        Attorney for Respondent

1     - OPINION AND ORDER

## INTRODUCTION

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging his state-court convictions for Rape in the First Degree, Sexual Abuse in the First Degree, Sodomy in the First Degree, Sexual Abuse in the Second Degree, Coercion, Theft in the First Degree, and Felon in Possession of a Firearm. For the reasons that follow, the Amended Petition (ECF No. 59) is denied.

## BACKGROUND

I. **Trial Court Proceedings and Direct Appeal**

In September 2013, a Lane County Grand Jury indicted Petitioner on several charges, including Kidnapping in the Second Degree ("Count 1"), Rape in the First Degree, Sexual Abuse in the First Degree, Sodomy in the First Degree, Sexual Abuse in the Second Degree, and Coercion. Resp't Ex. 103 (ECF No. 24-1). He was charged by a separate indictment charged with Theft in the First Degree and Felon in Possession of a Firearm. Resp't Ex. 104. Petitioner proceeded to a jury trial on both indictments.

    A. *Relevant Trial Court Proceedings*

        i. <u>Voir Dire</u>

During jury selection, the trial court judge read through Petitioner's charges and asked potential jurors whether "your personal views concerning this type of case might affect your ability to be fair and impartial in this particular case?" Tr. 58-61(ECF No. 25-1). Several individuals raised their hands. The judge asked each of them additional questions and found cause to excuse some from the jury, including those who disclosed that they were victims of sexual assault. Tr. 61-72. Juror D.V. did not raise any concern at that time.

The judge then asked potential jurors to give a one-to-two minute "life sketch," including who they are, what they do (or did) for a job to "help the attorneys know who you are." Tr. 73. When it was Juror D.V.'s turn, he stated his name, age and profession, and then said:

> [I'm] [n]ot normally nervous at all but I feel my heart pounding right now because I'm listening to you about being a fair fact-finder and impartial.
>
> And I'd like to think that I have some real anger issues over rape. And my oldest daughter has gone through that.
>
> And I'm just – I'm sitting here struggling with that because the person who's done that has never been brought to justice. Has never been called out. And I have some anger issues over that.
>
> Do I think I'm a fair, impartial fact finder? I think I could be. But it bothers me.

Tr. 77-78. The judge asked Juror D.V. whether his feelings about his daughter's case would "reflect in your ability to see [Petitioner] as being innocent," and whether Juror D.V. would "be able to listen to the evidence and look at the evidence and weigh that?" Tr. 78. He responded, "I'd like to think that I could do that," and acknowledged that his daughter's case involved a different person and was "a different situation." Tr. 78-79.

Both Petitioner's trial counsel and the prosecutor asked Juror D.V. additional questions. Juror D.V. elaborated that his anger issues stemmed from the unresolved nature of his daughter's case, and that his family had not attempted to prosecute the matter. Tr. 91, 108. He revealed that his daughter had been sexually assaulted when very young, that "she's been carrying that baggage for the last nine years," and that it was difficult as a parent to "find out after that number of years." Tr. 91-92. Trial counsel asked Juror D.V.:

> [Trial Counsel]: Well, we can't ask you to leave your life experiences at the door. That's just not possible. It's just not. You're going to get legal instructions. The judge is going to ask you to judge this case on its merits. Are you going to do your best to do that?
>
> [Juror D.V.]: I would always think that that's what I would do.

3    - OPINION AND ORDER

Tr. 92.

Trial counsel moved to excuse several potential jurors for cause. *See* Tr. 112-13, 164, 184. The record shows that six peremptory challenges were used to excuse potential jurors, but the judge did not specify which party was striking which potential juror. Tr. 145, 153, 157, 172, 178, 189. Juror D.V. remained on the jury and served as foreperson.

ii.   Witness Testimony and Closing Arguments

At trial, Cathy Young testified that she had been in a relationship with Petitioner beginning in April 2013. Tr. 241. She ended the relationship sometime that spring because Petitioner "could get really jealous," called her names, and took her car and didn't return it. Tr. 243-45.

On July 4, Petitioner showed up at Young's apartment and was "really nice again." Tr. 245-46. After about a week, they began fighting again, and Young became scared of Petitioner. Tr. 246-47. On July 14, Petitioner and Young's brother had a heated phone call, and Young's brother called the police to conduct a welfare check on Young. Tr. 248-49, 331. When officers arrived and knocked on Young's apartment door, neither Petitioner nor Young answered the door. Instead, Petitioner pushed Young into the bathroom. Tr. 250-51. Young thought Petitioner would "bust her skull" if she said anything and testified that she was scared to death of him. Tr. 251, 253.

The next day, Young left her apartment and told Petitioner to leave. Tr. 254. When she came home that evening, Petitioner was still there. Tr. 254-55. Young testified that Petitioner "got between me and the door and he locked the door." Tr. 256. He grabbed her vagina "and twisted as hard as he could." Tr. 256. He then dragged her to the bedroom, removed her underwear, pushed her on the bed and forced her to have penetrative and anal sex. Tr. 257-63. Petitioner later monitored a phone call between Young and her daughter. Tr. 265. Young told her daughter, "in

kind of a coded way," that she needed help and her daughter called the police. Tr. 263-67. Police arrived and arrested Petitioner. Tr. 326.

On July 16, Young went to the hospital where a nurse conduced a sexual assault forensic examination. Tr. 269, 351.The nurse testified that Young's injuries, which included bruises on her torso, upper arms, wrists, forearms, backs of her legs and upper things, an abrasion on her upper thigh, redness and swelling on the both the inside and outside of her vagina, and a small amount of vaginal bleeding, were consistent with Young's description of the sexual assault, and not consistent with someone who had engaged in "consensual rough sex." Tr. 355-56, 360, 404.

Petitioner also testified at trial. He acknowledged having a criminal history of "crimes of dishonesty," including four convictions for theft, two convictions for identity theft, two convictions for failing to appear, and one conviction each for forgery, giving false information to a police officer, and fourth degree assault constituting domestic violence. Tr. 439-40. He denied that he raped Young and claimed that the bruises on her body were "old." Tr. 437-38, 460-63.

During closing argument, the prosecutor argued to the jury that Petitioner was not credible, saying:

> Not only was his testimony about as incredible as you can get, to top off, you certainly have the evidence that he's a convicted liar, essentially. He's been convicted numerous times of crimes of dishonesty. And I would submit to you that he was entirely dishonest on the stand. *He has lots of convictions for domestic violence assault.*

Tr. 510 (emphasis added).

### B. Verdict, Sentencing and Direct Appeal

At the conclusion of the trial, Petitioner was found guilty of all counts. Tr. 530-31. All verdicts were unanimous except for Count 1. Tr. 532. The trial court sentenced Petitioner to a total of 344 months' imprisonment. Resp't Ex. 101. Petitioner appealed his convictions. The Oregon

Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 108, 109.

## II. Post-Conviction Relief Proceedings

### A. Initial Post-Conviction Relief Petition

Petitioner next filed for post-conviction relief ("PCR"). Resp't Ex. 110. With the assistance of appointed counsel, Petitioner filed an Amended Petition raising eight ineffective assistance of trial counsel claims and cumulative error. *See* Resp't Ex. 111.

Two of Petitioner's ineffective assistance of counsel claims are relevant to the instant proceedings. First, Petitioner argued that trial counsel was ineffective for failing to use a peremptory challenge to exclude Juror D.V. from the jury. Resp't Ex. 111 at 10-13. Second, Petitioner argued that trial counsel was ineffective for failing to "object, move to strike and demand a mistrial when the prosecutor repeatedly engaged in flagrant misconduct during summation." Resp't Ex. 112 at 31. Petitioner identified several comments and statements that trial counsel should have objected to, including the prosecutor's misstatement of fact that "[Petitioner] has lots of convictions for domestic violence assault." *Id*. at 32; Resp't Ex. 111 at 26-30.[1]

The PCR court denied relief in an oral opinion. As to the counsel's failure to exercise a peremptory challenge, the PCR court explained:

> And as I mentioned, there easily can be a difference between how a person looks at a child victim sex charge versus an adult coming in, explaining what happened. That's the first situation.
>
> But the real difficulty about jury selection is you need to have physical presence in a courtroom to really see jury selection. You need to see the interaction, the volume of speech, the inflection, the looks that the questioner and the person answering the question give; those physical looks. All of that is extremely important.

---

[1] In the instant Petition, Petitioner limits his claim to this statement. Am. Pet. at 6.

> And then this issue of who's next. And I think any practicing lawyer has been there. I always had a rule that I want to keep one reserved because gang is gone or somebody is coming right behind this person. And those are all factors in jury selection. And then the issue is again, did the trial counsel make error for not challenging this particular juror.
>
> And there's really nothing in the record that shows that. Certainly everybody brings past experiences into a courtroom. But then you have to ask the questions that the court and prosecutor did ask. And again you got to be able to point to misconduct or something wrong here for trial counsel. And I don't see that.
>
> There's nothing there to show that this juror could not set aside what happened to his young daughter by someone when this is an adult case, totally different circumstances. And he said he could do his best to do that. So I – petitioner has not claimed the second claim.

Resp't Ex. 131 at 39-40. With respect to counsel's failure to object during closing arguments, the PCR court stated:

> The one statement that was factually wrong was this lots of DV. This is one phrase out of a big argument. But even more than that, if you object to that, is that going to be sustained?
>
> You're going to immediately get, "This is not evidence. You make your own decisions base upon what you've seen." And certainly it's not going to go to mistrial or it is – I guess it's an S that's there. One letter and – or maybe that word, I guess that's it, "lots" that was something that – not the greatest practice.
>
> But on the other hand is it prejudice; no. And would it have been a successful objection it would've gotten – it's not evidence. You make your own decision. So consequently, I do agree that trial counsel had reasonable strategic decisions for not making objections in this.

*Id*. at 42-43.

Petitioner appealed. The Court of Appeals affirmed the PCR court's judgment in a written opinion, writing only to address Petitioner's claim that trial counsel was ineffective for failing to object during the prosecutor's closing argument. *See Reed v. Kelly*, 311 Or. App. 397, 398 (2021); Resp't Ex. 136. The Court of Appeals summarized the PCR court's basis for denying that claim and denied relief, explaining:

7    - OPINION AND ORDER

> Had petitioner's counsel objected when the prosecutor misstated that petitioner had "lots" of prior convictions for domestic violence assault—when the evidence was that he had one such conviction—the trial court presumably would have sustained the objection. However, the objection and the state's response likely would have had the effect of highlighting petitioner's criminal history. Meanwhile, upon sustaining the objection, the trial court would have reiterated the same instruction that it had already given twice, including immediately before closing arguments. Under the circumstances, it was reasonable for petitioner's counsel not to object, and, in any event, petitioner suffered no prejudice from the lack of objection given the existing jury instructions.

*Reed*, 311 Or. App. at 403. The Oregon Supreme Court denied review. Resp't Ex. 138.

### B. Successive Post-Conviction Relief Petition

Petitioner also filed a successive PCR Petition challenging his conviction on Count 1, which had been the result of a nonunanimous jury verdict.[2] Resp't Ex. 140. On March 1, 2023, the PCR court entered a stipulated judgment vacating Petitioner's conviction for Count 1 and remanded the case to Lane County Circuit Court for further proceedings. Pet. Ex. A (ECF No. 60-1). On August 7, 2023, the trial court entered a new Judgment dismissing Count 1 and resentencing Plaintiff on the remaining charges to a total of 260 months of incarceration. Pet. Ex. B.[3]

### III. Habeas Petition

While his successive PCR Petition was pending, Petitioner filed a *pro se* habeas corpus petition in this Court raising eight claims for relief. Pet. (ECF No. 1). At the conclusion of his state court proceedings, and with the assistance of appointed counsel, Petitioner filed an Amended Petition challenging the new Judgment. Am. Pet (ECF No. 59). He now raises three claims for relief:

---

[2] On April 20, 2020, the Supreme Court issued its decision in *Ramos v. Louisiana*, 140 S. Ct. 1390, 1394 (2020), holding that a state jury must be unanimous to convict a criminal defendant of a serious offense. In 2022, the Oregon Supreme Court held that the jury unanimity rule announced in *Ramos* applied retroactively. *Watkins v. Ackley*, 523 P.3d 86, 89 (Or. 2022).

[3] Petitioner initially appealed his resentencing proceedings, but voluntarily dismissed that appeal. Pet. Ex. C.

    **A. Trial counsel rendered ineffective assistance when he failed to utilize a remaining peremptory challenge to the seating on the trial jury of Juror [D.V.].**

    **B. Trial counsel's failure to challenge prosecutorial misconduct in closing argument deprived [Petitioner] of a fair trial and prejudiced the outcome of the case.**

    **C. Under the doctrine of cumulative error, the combined failures of trial counsel, asserted here, together violated the guarantee of effective assistance of counsel as guaranteed by the Sixth Amendment.**

See id.

# DISCUSSION

## I. The Merits

### A. Legal Standards

#### i. Deference to State-Court Decisions

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal

habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id*. at 410. When applying these standards, the federal court should review the "last reasoned decision" by a state court that addressed the issue. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

> ii. Ineffective Assistance of Counsel

The Sixth Amendment provides defendants with the right to assistance of counsel in all criminal prosecutions, which implies the right to effective assistance of counsel. *Missouri v. Frye*, 566 U.S. 134, 138 (2012). To establish a claim of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-pronged test. First, the petitioner must show that counsel's performance fell below an objective standard of reasonableness. 466 U.S. at 686. Such a showing requires the petitioner to overcome a strong presumption that the challenged conduct falls within the "wide range of reasonable professional assistance; that is the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689. The first prong thus is satisfied only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id*. at 687.

Second, a petitioner must demonstrate prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*. Therefore, it is not enough if counsel's errors had only "some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must have been "so serious as to deprive [the

petitioner] of a fair trial, a trial whose result is reliable." *Id*. In making the prejudice determination, the court must "consider the totality of the evidence before the judge or jury." *Id*. at 695. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

### B. Petitioner's Habeas Claims

In his Habeas Petition, Petitioner argues that 1) trial counsel was ineffective for failing to utilize a remaining peremptory challenge to exclude Juror D.V., 2) trial counsel was ineffective for failing to challenge prosecutorial misconduct during closing arguments, and 3) he is entitled to relief due to the combined failures of trial counsel under the doctrine of cumulative error. Petitioner raised each of these claims in his PCR proceedings. *See* Resp't Exs. 111, 133.

#### i. Trial Counsel's Failure to Utilize a Remaining Peremptory Challenge

Petitioner argues that Juror D.V.'s "statements regarding impartiality were equivocal and uncertain" and trial counsel should have used "an available peremptory challenge . . . to excuse [him]." Br. in Supp. at 21-22. Petitioner challenges Juror D.V. impartiality based on his responses to questions asked by the trial court judge and trial counsel, including when Juror D.V. was asked whether he would do his best to follow the judge's instruction and judge this case on its merits, and he responded, "I would always think that that's what I would do." Tr. 92. Petitioner argues that this statement is "purely aspirational," and establishes equivocation about whether he could serve impartially. Reply at 2 (ECF No. 66). Respondent argues that Juror D.V. adequately expressed and articulated his impartiality during voir dire. Sur-Reply at 4-5 (ECF No. 70).

Petitioner's claim is premised on the assertion that trial counsel's deficient performance deprived him of his Sixth Amendment right to an impartial jury. As a general matter, trial counsel's

decisions during jury selection are accorded a high degree of deference. *See Carrera v. Ayers*, 670 F.3d 938, 948 (9th Cir. 2011). Establishing *Strickland* prejudice in the context of juror selection requires a showing that, due to trial counsel's failure to exercise peremptory challenges, the jury panel contained at least one juror who was biased. *United States v. Quintero-Barraza*, 78 F.3d 1344, 1349 (9th Cir. 1995). The relevant test for determining whether a juror is biased is "whether the juror . . . had such fixed opinions that [the juror] could not judge impartially the guilt of the defendant." *Id*. (quoting *Patton v. Young*, 467 U.S. 1025, 1035 (1984)).

As noted, above, the Court of Appeals affirmed the PCR court's judgment of this claim without discussion. Therefore, the PCR court's opinion constitutes the last reasoned state-court decision.

In his PCR proceedings, Petitioner argued that competent counsel would have used a peremptory challenge to excuse Juror D.V. because he disclosed that he had "serious ongoing anger issues," was "physically reacting to hearing petitioner's charges and candidly questioned his ability to be a fair and impartial juror." *Id*. at 12. Petitioner argued that there was "more than a mere possibility" that trial counsel's failure affected the result of his trial. *Id*. at 12.

In response, the State submitted trial counsel's affidavit. Resp't Ex. 130. While he did not specifically recall his thoughts during Petitioner's vior dire, trial counsel attested:

> Generally, I make a judgment call if someone's specific experiences are such that they cannot be fair on the case. I might also be looking at who might be coming in from the panel, who might be worse than the person who would be on the jury. I assume what was happening was that this juror was not so bad that I would take the risk of someone unknown outside the panel. I have a tendency to reserve a[t] least one strike out of a concern that someone may be worse than the individuals currently on the panel, like a police officer or corrections officer or someone who might have some strong bias against the defendant.

*Id*. at 1-2.

In its oral opinion, the PCR court acknowledged the factual and legal differences between a sexual assault case where the victim is a child and where the victim is an adult. Resp't Ex. 131 at 39. The PCR court also emphasized the necessity of "hav[ing] physical presence in a courtroom to really see jury selection." *Id.*; *see Yount*, 467 U.S. 1025, 1038 n. 14 (1984) ("Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying.").

While trial counsel did not attest to his strategy in Petitioner's vior dire, he did attest to his general strategy "to reserve a[t] least one strike out of a concern that someone may be worse than the individuals currently on the panel, like a police officer or corrections officer or someone who might have some strong bias against the defendant." Resp't Ex. 130 at 1-2. The PCR court reasonably found this to be a sound trial strategy. Resp't Ex. 131 at 39.

Additionally, the PCR court reasonably concluded that Petitioner had not established prejudice:

> There's nothing there to show that [Juror D.V.] could not set aside what happened to his young daughter by someone when this is an adult case, totally different circumstances. And he said he could do his best to do that. So I – Petitioner has not claimed the second claim.

Resp't Ex. 131 at 39-40. Here, Juror D.V.'s honest responses to questions posed by the trial court judge, Petitioner's trial counsel and the prosecutor about his own feelings, about what happened to his daughter, and whether he could be a fair and impartial fact finder in Petitioner's case, including that he "would always think that that's what I would do," do not establish that he held such fixed opinions to render him biased. Rather, his statements showed a willingness to follow the judge's instructions and decide the case on the merits. For all these reasons, the PCR court's decision was neither contrary to nor an unreasonable application of clearly established federal law and Petitioner is not entitled to habeas corpus relief as to his first claim for relief.

### ii. Trial Counsel's Failure to Object During Prosecutor's Closing Argument

Petitioner asserts that trial counsel was ineffective for failing to object to the prosecutor's misstatement of his criminal history. Br. in Supp. at 27-28. Petitioner argues that, had trial counsel objected, the trial court judge would have sustained the objection and given a contemporaneous curative instruction. *Id*. Petitioner also contends that the jury was likely to interpret the prosecutor's misstatement of his criminal history as improper propensity argument. *Id*. at 28. Respondent argues that Petitioner has failed to identify an "egregious misstatement" to which all reasonable trial counsel would have objected. Resp. at 27.

Where a petitioner alleges that trial counsel was ineffective for failing to raise an objection, he must establish that the decision to forego objection fell below an objective standard of reasonableness, and that if counsel had objected, there is a reasonable probability that the objection would have been sustained and the outcome of the trial would have been different. *See Juan H. v. Allen*, 408 F.3d 1262, 1273–74 (9th Cir. 2005) (noting that counsel is not ineffective for failing to raise a meritless objection). Generally, failure to raise an objection during closing argument does not constitute deficient performance. *Zapata v. Vasquez*, 788 F.3d 1106, 1115 (9th Cir. 2015). "Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) (citing *Strickland*, 466 U.S. at 669).

The Court of Appeals acknowledged that the prosecutor misstated the evidence regarding Petitioner's convictions and that, if trial counsel had objected, the judge would have simply "reminded the jurors to rely on the actual evidence, not the lawyer's statements–which it had already instructed the jury twice–and that would have been the end of it." *Reed*, 311 Or. App. at

402. The court also found that it was reasonable for trial counsel *not* to object, because an objection "would have had the effect of highlighting petitioner's criminal history." *Id*. at 403. Indeed, reasonable trial counsel could have made a strategic decision to forego an objection to avoid highlighting Petitioner's criminal history. *See Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (finding that failure to object to the prosecutor's comments, "possibly to avoid highlighting them, was a reasonable strategic decision."). The Court of Appeals also reasonably concluded that "petitioner suffered no prejudice from the lack of objection given the existing jury instructions." *Reed*, 311 Or. App. at 403.

In sum, Petitioner has not shown that trial counsel's failure to object to the prosecutor's misstatement of Petitioner's prior convictions during closing argument is the type of egregious misconduct that falls below an objective standard of reasonableness and has not shown a reasonable probability of a different result had counsel objected or sought a curative instruction or admonishment. For all these reasons, Petitioner has not established the Court of Appeals' decision was contrary to or an unreasonable application of clearly established federal law and he is therefore not entitled to habeas corpus relief as to this claim.

        iii.   Cumulative Error

Finally, Petitioner argues that the cumulative effect of trial counsel's alleged errors violated the Sixth Amendment guarantee of effective assistance of counsel. Am. Pet. at 6. As discussed above, Petitioner's substantive ineffective assistance of counsel claims lack merit. Accordingly, he has no error to accumulate. *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible."). Accordingly, Petitioner is not entitled to habeas corpus relief and the Amended Petition is denied in its entirety.

**CONCLUSION**

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (ECF No. 59) is denied. The Court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

2/6/2025
DATE

*Amy M. Baggio*
Amy M. Baggio
United States District Judge

16    - OPINION AND ORDER